Donald R. YOUNG, Mary A. Young and A & D Development Corporation, an Indiana Corporation, Defendants-Appellants,

v.

Gary M. VAN ZANDT and Van Zandt Enterprises, Inc. d/b/a A & D Development Company, an Indiana Corporation, Plaintiffs-Appellees.

No. 1–782A165.

Court of Appeals of Indiana, First District.

May 23, 1983.

Charles C. Griffith, Leslie C. Shively, Johnson, Carroll & Griffith, Evansville, for defendants-appellants.

James F. Flynn, Newman, Trockman, Lloyd, Flynn & Rheinlander, P.C., Evansville, for plaintiffs-appellees.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Appellants Donald and Mary Young and A & D Development Corporation (A & D) appeal from a judgment of the Vanderburgh Superior Court enforcing the terms of a covenant not to compete and awarding liquidated damages. Additionally, appellees Gary VanZandt and VanZandt Enterprises, Incorporated cross-appeal from the court's judgment on their breach of warranty claim. We affirm in part and reverse in part.

## FACTS[1]

After considerable negotiation, Gary VanZandt and VanZandt Enterprises, Incorporated, purchased an on-going concern known as A & D Development Corporation from Donald and Mary Young. As part of

---

1. We note, for the benefit of appellants' counsel in this case and counsel generally, that the following items are not properly includable within the statement of the case:

(1) a verbatim complaint in four (4) counts;
(2) a verbatim answer in four (4) counts and a counterclaim;
(3) the verbatim motions to correct error and statements of facts and grounds upon which the errors are based, of both the plaintiffs and defendants, in their entirety;
(4) the trial court's verbatim ruling on the motions to correct error; and
(5) a summary of the exhibits presented at trial.

These items should not be made a part of the statement of the case, except insofar as portions of them are in dispute or are the subject of the appeal. If counsel on appeal desires to include these items, they should be included in the brief in an appendix. The filing of a brief in which fifty percent (50%) of the substantive portion of a rather lengthy brief is occupied by such material is unnecessary, especially where such items are of little practical value in assessing the merits of the appeal. This court requires a complete copy of the record below, in part, to avoid such needless duplication.

the sale agreement, Donald Young agreed to work for A & D for one year from the date of the sale. He also agreed to be bound by a covenant not to compete. The covenant bound Young not to compete, directly or indirectly, with A & D for a period of five (5) years anywhere within two hundred (200) miles of Evansville, Indiana.

A & D was involved in waste disposal and the commercial sandblasting and painting of industrial steel. However, the waste disposal represented only about one quarter (¼) of A & D's business. The other three quarters (¾) of the business involved the sandblasting and painting operation, and better than eighty-five percent (85%) of A & D's sandblasting and painting work came from one account—Mesker Steel. VanZandt testified that the covenant not to compete was drawn in terms of five (5) years and two hundred (200) miles in order to protect the Mesker Steel account, largely because of the close personal relationship between Donald Young and Richard Durrett, Mesker's General Manager.

Young quit several months after the sale and eventually went to work for Mesker. Several other employees of A & D either quit or were fired after the sale and went to work for either Young personally or for Mesker. Sam Young, Donald's brother, quit and, with Donald's financial backing, set up his own waste removal business in Illinois some one hundred seven (107) miles distant but within two hundred (200) miles of Evansville. Finally, after increasing difficulties on a particular job Mesker had subcontracted to A & D, Mesker terminated its business with A & D and sent its steel to Chicago.

VanZandt and VanZandt Enterprises, Incorporated brought suit for enforcement of the covenant not to compete. They also sued for damages claiming that Youngs and A & D had breached certain warranties concerning the worthiness of equipment and the existence of pending or threatened

litigation. The court found for VanZandt and VanZandt Enterprises on the breach of covenant claim,[2] and awarded liquidated damages as set forth in the contract. The court found against VanZandt and VanZandt Enterprises as to the breach of warranty claims. From this judgment, both parties now appeal.

## ISSUES

Appellants present three issues for review. However, one of the issues is dispositive of this appeal, and we, therefore, deal with it alone. Rephrased, it is as follows:

Did the trial court err, as a matter of law, in enforcing the covenant not to compete?

Appellees on their cross-appeal raise two issues for review. Rephrased, they are as follows:

1. Did the trial court err in concluding that Young did not breach warranties to VanZandt concerning the transfer of equipment pursuant to the sale agreement?

2. Did the trial court err in concluding that Young did not breach warranties concerning the existence of pending or threatened litigation?

## DISCUSSION AND DECISION

### APPELLANTS' ISSUE

The trial court erred, as a matter of law, in enforcing the covenant not to compete.

■ We begin by noting that covenants not to compete are in restraint of trade, and are, therefore, not favored by the law. *Licocci v. Cardinal Associates, Inc.,* (1983) Ind., 445 N.E.2d 556, 561; *Captain & Co., Inc. v. Towne,* (1980) Ind.App., 404 N.E.2d 1159, 1161; *Frederick v. Professional Building Maintenance Industries, Inc.,* (1976) 168 Ind.App. 647, 648, 344 N.E.2d 299, 301. They are also strictly construed against the covenantee. *Donahue v. Permacel Tape Corp.,* (1955) 234 Ind. 398, 404, 127 N.E.2d 235, 237. However, a cove-

---

2. While we do not reach appellants' second issue concerning evidence of competition, and without detailing the myriad petty intrigues involved, suffice it to say that there was more than sufficient evidence from which the trial court could have found that Young violated the covenant not to compete, in not one respect, but several.

▌

nant will be enforced where it is reasonable. *Id.* at 408, 127 N.E.2d at 238–39, *citing* Williston on Contracts, § 1636 pp. 4580–81; *Frederick; Struever v. Monitor Coach Co., Inc.,* (1973) 156 Ind.App. 6, 8–9, 294 N.E.2d 654, 656, *trans. denied.* While reasonableness is a matter to be decided by the court, *Ross Clinic, Inc. v. Tabion,* (1981) Ind.App., 419 N.E.2d 219, 221 (transfer pending); *Raymundo v. Hammond Clinic Association,* (1980) Ind.App., 405 N.E.2d 65, 68; *Frederick,* it ultimately resides in the facts and circumstances of each individual case. *Licocci; Unishops, Inc. v. May's Family Centers, Inc.,* (1980) Ind.App., 399 N.E.2d 760, 764, *trans. denied.* However, the measure of reasonableness varies depending upon the type of covenant involved.

▌ Employee covenants not to compete differ from covenants involved in the sale of a business.[3] In the former, the covenant is deemed to be reasonable where (1) the restraint is reasonably necessary to protect the employer, (2) it is not unreasonably restrictive of the employee, and (3) it is not against public policy. *Slisz v. Munzenreider Corp.,* (1980) Ind.App., 411 N.E.2d 700, 704, *trans. denied. See also Donahue,* 234 Ind. at 408, 127 N.E.2d at 239. Whether the covenant is unreasonably restrictive of the employee is measured in terms of time, space, and the activity or conduct prohibited. *Raymundo; Frederick.* In the latter, the covenant is deemed to be reasonable and, thus, enforceable where it is limited to the "area of the business involved...." *Donahue,* 234 Ind. at 405, 127 N.E.2d at 238. Reasonableness is again measured in terms of time, space, and prohibited activity. Where the sale of a business is involved, the interest to be protected relates to the good will of the business. *Donahue,* 234 Ind. at 406, 127 N.E.2d at 238. "If for any reason the restraint is greater than necessary to protect the good will, the contract is invalid." *Donahue,* 234 Ind. at 406, 127 N.E.2d at 238, *quoting* 2 Page on Contracts, § 789 p. 1389. While covenants

involved in the sale of a business are not as ill-favored at law as are employee covenants, *see Seach v. Richards, Dieterle & Co.,* (1982) Ind.App., 439 N.E.2d 208, 215, they are, never-the-less, also subject to the test of reasonableness and will not be enforced where found to be unreasonable.

▌ Where the trial court could find the covenant not to compete unreasonable under any set of facts, it will be deemed to be unenforceable. *See 4408, Inc. v. Losure,* (1978) 175 Ind.App. 658, 660, 373 N.E.2d 899, 900–01. If the covenant is not reasonable as written, the court may not create a reasonable restriction under the guise of interpretation, since this would subject the parties to an agreement they had not made. *Licocci; Donahue,* 234 Ind. at 413, 127 N.E.2d at 241. "However, if the covenant is clearly separated into parts and some parts are reasonable and others are not, the contract may be held divisible. The reasonable restrictions may then be enforced." *Licocci,* 445 N.E.2d at 561 *citing Welcome Wagon, Inc. v. Haschert,* (1955) 125 Ind. App. 503, 508–09, 127 N.E.2d 103, 106. *See also Seach* (enforcing the covenant to the extent of the legally enforceable terms is consistent with what is known as the "blue-pencil" doctrine). *But cf. Frederick* (court refused to strike counties that covenantor had not worked in from those listed in restrictive covenant, concluding that parties could not be subject to an agreement which they had not made). It is manifest that such judicial redaction may not add terms to the contract and must restrict itself to the application of existing terms. *Seach,* 439 N.E.2d at 214–15. *See also Donahue.* Where the covenant is both unreasonable and incapable of redaction, it will be unenforceable.

▌ In the instant case VanZandt's attorney drafted the following covenant not to compete as part of the sales agreement:

---

**3.** While neither party really distinguishes between these types of cases, it is clear that the covenant in this case is related to the sale of the business, not the employment of Young. It

was included as a part of the sellers' warranties in the agreement of the sale, rather than being referred to in the employment agreement.

"Sellers will not directly or indirectly engage in any activity or enterprise in competition with or against Buyers for a period of 5 years from this date and in a circular geographic area, the outer [sic] of which is the intersection of Division Street with U.S. Highway 41 in Evansville, Vanderburgh County, Indiana, and the radius of which is 200 miles long."

Record at 530. VanZandt testified that the 200 mile radius was included because he deemed it unreasonable to expect Mesker to go a greater distance to have their work done. While this might be a reasonable basis for setting the geographic limits of the covenant as far as the sandblasting and painting operations and the preservation of the Mesker Steel account are concerned, something which we need not decide, we cannot help but note that the covenant prohibits sellers from engaging in "any activity or enterprise in competition with or against Buyers." *Id.* It is clear that this would include waste disposal as well. Undisputed evidence at trial indicated that the waste disposal portion of the business was confined to the Evansville area. The covenant was clearly unreasonable in its application to the waste disposal portion of the business and, therefore, unenforceable unless capable of redaction.

In order to strike unenforceable portions of a covenant not to compete, the covenant must be capable of separation into enforceable and unenforceable parts. In *Licocci,* the covenant was divided into three separable portions:

" '[T]he Representative does agree that for a period of sixty (60) days from and after the termination of this Contract the said Representative shall not engage in any business or activities, which directly or indirectly compete in anyway (sic) with the business and activities of the Corporation within the territory assigned to the Representative under this Contract; that the Representative will not for a period of Sixty (60) days from and after the termination of this Contract by either party as hereinafter setforth [sic] call upon, talk with or solicit any business from any customers of the Corporation within or outside the territory of the Representative as hereinafter setforth [sic]; and further that the Representative will not for a period of one year from and after the term of this contract by either party as herinafter (sic) set forth engage in, participate in, or in any way assist anyone else, directly or indirectly, selling to cusotmers (sic) to whom said representative sold products during the time he was engaged as a Representative of Cardinal Associates Midwest, Inc. any product which is either identical to or essentially the same product as those products said Representative sold to that particular customer while he was representing Cardinal Associates Midwest, Inc.' " (Footnote omitted.)

*Id.* at 560–61. The trial court in *Licocci* enforced the first and third provisions, while refusing to enforce the second. Appellants did not appeal the reasonableness of the first provision. The court of appeals then struck the third provision as unreasonable. On transfer, while reinstating the judgment of the trial court, our supreme court, in partially adopting the language of the appellate court, noted that the contract was severable and capable of enforcement as to its reasonable components. Similarly, in *Seach,* the covenant stated:

" 'The Employee, therefore, agrees that if for any reason, the Employee's employment with the Firm terminates for a period of three (3) years thereafter the Employee will not;

1) Contact, advise, visit or in any way solicit directly or indirectly any present, past or prospective client (prospective client defined as a person or business previously contacted at least once) of the Firm; or

2) Give, sell, or otherwise convey to any other person, firm, partnership or corporation the right to canvass, solicit or accept any business for any other accounting firm, from any present, past or prospective client of the Firm, nor shall the Employee aid or assist such other person, firm, partnership or corporation in canvassing, soliciting or accepting such business; or*

3) Directly or indirectly request or advise any present, past or prospective client to withdraw, curtail or cancel its business with the Firm;

4) Directly or indirectly disclose to any other person, firm, partnership or corporation the names, addresses or telephone numbers of such present, past or prospective client of the Firm.' " (Original emphasis.)

*Id.* at 209–10. In *Seach,* the court on appeal struck the past and future restrictions from the covenant as vague and overly broad, while enforcing the covenant as to present customers of the firm. However, the instant case is factually different from the cases cited above.

In the instant case, the restriction prohibited Young from engaging in "any activity or enterprise" which was in competition with the business of A & D. This is clearly unreasonable as applied to the waste disposal business, which operated only in Evansville. It is also clear that there is no language in the covenant which may be stricken in order to remedy this deficiency. Because the covenant is unreasonable as applied to the facts of this case and incapable of redaction, we hold that the covenant is unenforceable, as a matter of law, and the trial court erred, therefore, in upholding the terms of the covenant.[4]

## CROSS–APPELLANTS' ISSUE ONE

The trial court did not err in concluding that Young had not breached any warranty concerning the transfer of equipment pursuant to the documents of sale.

VanZandt and VanZandt Enterprises contend that Youngs breached their warranty concerning the transfer of equipment insofar as Youngs and A & D allegedly failed to deliver certain equipment, and misrepresented and overstated other equipment values. Youngs and A & D argue that VanZandt's contentions merely raise an issue of sufficiency of the evidence. We are constrained to agree with Youngs.

As the original party plaintiffs, VanZandt and VanZandt Enterprises had the burden of proof. On their cross-appeal, they effectively appeal from a negative judgment. On appeal from a negative judgment, this court will reverse the decision of the trial court only where the judgment is contrary to law, and the evidence is without conflict and leads unerringly to one conclusion and the trial court reached the opposite conclusion. *Barrick Realty Co. v. Bogan,* (1981) Ind.App., 422 N.E.2d 1306, 1307, *trans. denied; Froberg v. Northern Indiana Construction, Inc.,* (1981) Ind.App., 416 N.E.2d 451, 454, *trans. denied.* In determining whether a negative judgment is contrary to law, we will neither weigh the evidence nor judge the credibility of witnesses. *Robertson v. Mattingly,* (1980) Ind. App., 413 N.E.2d 647, 649; *Forth v. Forth,* (1980) Ind.App., 409 N.E.2d 1107, 1111. Rather, we consider only the evidence favorable to the prevailing party, together with all reasonable inferences deducible therefrom. *Robertson; Forth.* Where there is evidence to support the judgment of the trial court, we will not say that the judgment is contrary to law.

In the instant case, VanZandt and VanZandt Enterprises presented a substantial number of itemized claims, some of which were individually refuted by Youngs and A & D, and others of which were generally denied. It is clear from the record that the trial court was faced with conflicting evidence regarding the claimed breach of warranty. Where the evidence is conflicting we cannot say that the court's judgment is contrary to law. There was no error in denying the claim.

## CROSS–APPELLANTS' ISSUE TWO

The trial court did not err in concluding that Young did not breach his warranty concerning the existence of pending or threatened litigation.

4. We note for the benefit of appellants' counsel that our decision in *Woodward Insurance, Inc. v. White,* (1981) Ind.App., 425 N.E.2d 258 was vacated by our supreme court at 437 N.E.2d 59 on July 19, 1982. The appellants' brief was filed April 13, 1983. We admonish counsel concerning citation of cases which have been vacated.

In the sale agreement, Youngs warranted that there was no pending or threatened litigation involving A & D Development. In fact, as a result of a certain job, a number of employees' cars at the job site were damaged by paint. This involved claims against A & D's insurer, which resulted in increased insurance costs. VanZandt and VanZandt Enterprises contend that these claims should have been considered as pending or threatened litigation. We cannot agree.

 The parties dispute the interpretation to be given the terms of their contract. In addressing a dispute over contract terms, the court must first examine the contract to determine whether the terms are ambiguous. *Indiana Industries, Inc. v. Wedge Products, Inc.,* (1982) Ind. App., 430 N.E.2d 419, 423, *trans. denied.* Contract terms are ambiguous only where reasonable men would find the terms susceptible to more than one interpretation. *Id.; Marksill Specialties, Inc. v. Barger,* (1981) Ind.App., 428 N.E.2d 65, 69, *trans. denied.* Any ambiguities in a contract are to be strictly construed against the party who prepared the document. *English Coal Co., Inc. v. Durcholz,* (1981) Ind.App., 422 N.E.2d 302, 309, *trans. denied.* However, where no ambiguity exists, and the terms of the contract are plain and clear on the face of the document, such terms are conclusive as to the contract's meaning and this court will apply its provisions. *Piskorowski v. Shell Oil Co.,* (1980) Ind.App., 403 N.E.2d 838, 846, *trans. denied.* Further, words in a contract are given their ordinary meaning. *Huntington Mutual Insurance Co. v. Walker,* (1979) Ind.App., 392 N.E.2d 1182, 1185, *trans. denied.*

██ In the instant case, whether the pending or threatened litigation term is ambiguous or not, we reach the same result. If we enforce the contract on its face, we cannot say that an insurance claim which is satisfied without any recourse to the legal process is pending or threatened litigation. Likewise, if we find the term to be ambiguous, we must strictly construe it against the drafter—in this case, VanZandt's attorney,

and thereby VanZandt. Strict construction gives the same result as our enforcement of the contract on its face. For this reason, we cannot say that the trial court erred, as a matter of law, in concluding that the insurance claims were not pending or threatened litigation within the meaning of the contract.

Accordingly, we reverse the judgment of the trial court upholding the covenant not to compete, and affirm the court as to the issues raised by cross-appellants.

Affirmed in part, reversed in part. Costs assessed against appellees.

ROBERTSON, P.J., and NEAL, J., concur.