Keith **GUTREUTER**, Plaintiff and Counterdefendant,

and

Sharon Gutreuter, Air Technologies, Inc., a Kansas corporation, and A.J. Dralle, Inc., an Illinois corporation, Counterdefendants,

v.

**FIBER BOND CORPORATION**, an Illinois corporation, Defendant and Counterplaintiff.

No. 87 C 6736.

United States District Court, N.D. Illinois, E.D.

March 22, 1989.

---

Nancy McKeating, Joliet, Ill., for plaintiff and counterdefendant Keith Gutreuter.

William M. Stevens, Rooks Pitts & Poust, Chicago, Ill., for counterdefendants Air Technologies, Inc. and A.J. Dralle, Inc.

Robert R. Tepper, Rosenthal & Schanfield, Chicago, Ill., for defendant and counterplaintiff Fiber Bond Corp.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

### FACTS

Fiber Bond Corporation ("Fiber Bond") is an Illinois corporation with its principal place of business in Michigan City, Indiana. Fiber Bond manufactures air filter products. Fiber Bond sells its products to independent distributors, who in turn sell to the ultimate consumers.

Kleen Line, Inc. ("Kleen Line") was an Ohio corporation with its principal place of business in Newark, Ohio which manufactured and sold pleated air filters. Sharon Gutreuter was President and owned all of the outstanding shares of Kleen Line. Keith Gutreuter was employed as sales manager for Kleen Line.[1] Prior to its acquisition of Kleen Line, Fiber Bond did not manufacture or sell pleated air filter products.

On May 8, 1984, Fiber Bond, Kleen Line, and the Gutreuters executed a Purchase Agreement whereby Fiber Bond purchased

---

1. For purposes of clarity, when we refer to the Gutreuters individually we will use their first and last names. We will refer to them collectively as the Gutreuters.

the Kleen Line business.[2] In paragraph 3 of the Purchase Agreement, Fiber Bond agreed to employ Keith Gutreuter and Keith Gutreuter agreed to be employed by Fiber Bond as the sales manager for Fiber Bond's Filter Products Division in accordance with the terms and conditions set forth in an Employment Contract. Paragraph 3 expressly provides that "execution and delivery of the ... employment agreement shall be a condition of [Fiber Bond's] obligations [under the Purchase Agreement]." In paragraph 4, Fiber Bond and the Gutreuters agreed to enter into an agreement not to compete. Paragraph 4 contains no language suggesting that the purchase of Kleen Line by Fiber Bond was contingent upon the execution of the agreement not to compete. Nevertheless, the parties did assign nearly 7% of the total purchase price to the Non–Competition Agreement.

Pursuant to the Employment Contract, Fiber Bond employed Keith Gutreuter as its sales manager for its Filter Products Division. By letter dated February 9, 1987, Keith Gutreuter gave Fiber Bond ninety days notice of his intent to terminate his employment pursuant to paragraph 5 of the Employment Contract.

Keith Gutreuter's employment with Fiber Bond ceased on March 13, 1987.[3] On April 13, 1987, Keith Gutreuter formed Air Technologies, Inc. ("Air Technologies"). Air Technologies is incorporated in the State of Kansas and has its principal place of business in Ottawa, Kansas. On June 1, 1987, Air Technologies began manufacturing air filters.

On July 31, 1987, Keith Gutreuter filed a two-count complaint against Fiber Bond seeking both declaratory and monetary relief. Keith Gutreuter asserts that the Non–Competition Agreement is unenforceable because its scope is unreasonably broad and is not reasonably drafted to protect any protected interests.

On August 23, 1987, Fiber Bond filed its answer to Keith Gutreuter's complaint and filed its counterclaims against the Gutreuters, Air Technologies and A.J. Dralle, Inc. ("Dralle"). Dralle is an Illinois corporation and its presence in this action could destroy diversity between the parties. Accordingly this Court must examine preliminarily the claims raised against Dralle to determine if this Court may continue to exercise diversity jurisdiction.

## DISCUSSION

■ If Fiber Bond's claims against Dralle are compulsory, this Court may exercise ancillary jurisdiction over the claims and over Dralle. See Fed.R.Civ.P. 13(a) & (h); *Payne v. AHFI Netherlands, B.V.*, 482 F.Supp. 1158, 1160 & 1162 (N.D.Ill.1980). Counts III and IV of Fiber Bond's counterclaim are directed at Dralle. In count III, Fiber Bond alleges that Dralle induced Keith Gutreuter to breach Gutreuter's Non–Competition Agreement with Fiber Bond. In count III, Fiber Bond seeks compensatory and punitive damages. In count IV, Fiber Bond alleges that Dralle breached its exclusive distributorship contract by encouraging the Gutreuters to form Air Technologies to compete with Fiber Bond. Fiber Bond seeks to recover damages which will compensate it for the injuries sustained as a result of Dralle's breach of the alleged exclusive distributorship contract.

A counterclaim falls within the ambit of Fed.R.Civ.P. 13(a) "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed.R.Civ.P. 13(a). To determine if a claim is compulsory, this Court must evaluate the "logical relationship" between Keith Gutreuter's claim and Fiber Bond's counter-

---

**2.** The Purchase Agreement provides for the transfer of the following assets and assigns them the following values:

| Asset | Amount | Percent of Purchase Price |
|---|---|---|
| Inventory | $ 39,640 | 27.2% |
| Equipment | 93,016 | 63.8% |

| Asset | Amount | Percent of Purchase Price |
|---|---|---|
| Trade Secrets | $1,000 | .7% |
| Unfilled Purchase Orders | 1,000 | .7% |
| Trade Name & Goodwill | 1,000 | .7% |
| Non–Competition Agreement | 10,000 | 6.9% |
| | $ 145,656 | 100.0% |

**3.** The parties dispute whether Keith Gutreuter's departure on March 13, 1987 was voluntary.

claims. *See Warshawsky & Co. v. Arcata National Corp.*, 552 F.2d 1257, 1261 (7th Cir.1977). Generally, a counterclaim is compulsory if it speaks to the validity or essence of plaintiff's complaint. *See Martino v. McDonald's System, Inc.*, 598 F.2d 1079, 1085 (7th Cir.), *cert. denied*, 444 U.S. 966, 100 S.Ct. 455, 62 L.Ed.2d 379 (1979).

If we examine the conduct giving rise to this action as such conduct occurred, the logical relationship between count III of Fiber Bond's counterclaim and Keith Gutreuter's action becomes apparent. In February of 1987, Keith Gutreuter notified Fiber Bond of his intent to terminate his employment relationship with them. That relationship actually was terminated in March of 1987. In April of 1987, Gutreuter formed Air Technologies, a company which competes with Fiber Bond. Assuming *arguendo* that the Non–Competition Agreement is enforceable, this conduct constituted a breach of the Non–Competition Agreement because Ottawa, Kansas (the locale of Air Technologies) is within a 500 mile radius of Michigan City, Indiana. According to Fiber Bond, Dralle actively induced Keith Gutreuter to form Air Technologies. Dralle's conduct necessarily occurred prior to or contemporaneously with Keith Gutreuter's alleged breach and allegedly is the predicate for the subsequent breaches of contract or tortious conduct by the Gutreuters and Air Technologies which give rise to Fiber Bond's damage actions against these counterdefendants.[4] This recitation of the facts demonstrates that count III is a compulsory counterclaim within the meaning of rule 13(a).

■ Conversely, the facts demonstrate that count IV of Fiber Bond's counterclaim is permissive rather than compulsory. In count IV, Fiber Bond seeks a damage award from Dralle for Dralle's breach of its exclusive distributorship contract with Fiber Bond.[5] The specific allegations of count IV only allege that Dralle encouraged the Gutreuters to open a competing business. The counterclaim does not allege that Dralle sold any competing products. To the extent that Dralle's alleged violation involves competing products manufactured by air filter manufacturers other than Air Technologies, the breach of contract claim would have little, if any, relation to the dispute between Fiber Bond and the Gutreuters. Even were the counterclaim to allege that Dralle sold competing products which are produced by Air Technologies, the counterclaim would not be logically related to the underlying cause of action within the meaning of rule 13(a) and this Court would not allow the claim to proceed in this litigation because count IV involves a distinct dispute over a separate contract.

The underlying dispute in this action challenges the validity of an Employment

---

4. An action to enforce the terms of an agreement is the "flip side" of an action to negate the agreement. Thus, Fiber Bond's counterclaim to enforce the terms of the Non–Competition Agreement is compulsory. Similarly, Fiber Bond's action for breach of the agreement also is compulsory. In a breach of contract case, a court necessarily passes upon the enforceability of the underlying contract because enforceability of the underlying contract is a prerequisite to recovery for a breach. Keith Gutreuter's original action tests the validity and enforceability of the Non–Competition Agreement. Thus, Keith Gutreuter's action constitutes the first step of analysis of Fiber Bond's counterclaims for the alleged inducement to breach and the alleged actual breaches of the Non–Competition Agreement. Clearly, this Court's finding that these counterclaims are compulsory furthers the policies which underlie rule 13: joinder prevents a multiplicity of actions and achieves an efficient resolution to disputes arising out of common matters. *See Warshawsky*, 552 F.2d at 1261.

5. Count IV is somewhat unclear. Fiber Bond realleges paragraphs 1 through 22 of count III as paragraphs 1 through 22 of count IV and further alleges that Dralle encouraged the counterdefedants to form a business selling products which competed with Fiber Bond's products *in breach of its distributorship contract*. The specific allegations of count IV suggest that Fiber Bond seeks to hold Dralle liable for inducing the counterdefendants' breaches of contract. If that is the case, then count IV merely elaborates on count III of Fiber Bond's counterclaim. The prayer for relief in count IV, however, suggests that Fiber Bond seeks damages from Dralle for Dralle's own breach of its distributorship contract. In fact, Fiber Bond seeks tort remedies in count III (i.e., compensatory and punitive damages) and a contract remedy in count IV. We are persuaded that count IV of the counterclaim seeks damages for Dralle's breach of its separate distributorship contract with Fiber Bond.

Contract and a Non–Competition Agreement. Count IV would require this Court to examine an exclusive distributorship agreement and to focus its analysis on the execution and subsequent breach of that particular contract. If count IV were a compulsory counterclaim, Fiber Bond could bring into this litigation any of its exclusive distributors who breach their exclusive distributorship contracts by selling Air Technologies' products. Clearly, the claim asserted in count IV expands this dispute beyond the underlying transaction or occurrence. Accordingly, this Court finds that count IV of Fiber Bond's compulsory counterclaim is permissive rather than compulsory. Because this Court has no independent basis for exercising jurisdiction over Dralle or over count IV, we dismiss count IV of Fiber Bond's counterclaim without prejudice.

We now address Keith Gutreuter's motion for summary judgment on the issue of the enforceability of the Non–Competition Agreement.[6] In addressing this issue, this Court initially must determine the applicable law governing the rights and obligations of the parties to the agreements in dispute.[7] We note that the Purchase Agreement contains a choice of law clause in favor of Indiana law. Paragraph 17 specifically states that the "Agreement [was] negotiated, executed and delivered and is expected to be consummated in the State of Indiana and shall be governed and construed in accordance with the laws of the State of Indiana." Such choice of law provisions are enforceable. *See Medline Industries, Inc. v. Grubb*, 670 F.Supp. 831 (N.D.Ill.1987). The parties seem to assume that this paragraph does not apply to the Employment Contract or the Non–Competition Agreement. The other terms of the Purchase Agreement suggest otherwise.

Paragraphs 3 and 4 of the Purchase Agreement specifically require the parties to enter into the Employment Contract and the Non–Competition Agreement. Furthermore, paragraph 3 makes the Purchase Agreement contingent upon the execution of the Employment Contract. We believe that paragraphs 3 and 4 incorporate by reference the Employment Contract and the Non–Competition Agreement and that each is governed by Indiana law.[8]

Even if the choice of law provision did not apply, this Court would apply Indiana substantive law to this dispute. In diversity cases, a federal district court must apply the conflict of laws principles of the state in which it sits. *See Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Consequently, we look to Illinois choice of law principles to determine which state's substantive law applies to this dispute.

The Illinois choice of law rule for contract cases is not authoritatively established; however, courts in this District have taken the position that the Illinois Supreme Court would adopt the "most significant contacts" approach if it were to decide this issue anew. *See Wonderlic Agency, Inc. v. Acceleration Corp.*, 624 F.Supp. 801, 804 (N.D.Ill.1985). Under the most significant contacts approach, this Court must apply five factors: (1) where the contract was negotiated; (2) where the contract was executed; (3) where the contract was performed; (4) the situs of the subject matter of the contract; and (5) the domicile, residence, place of incorporation and place of business of the parties. *Id.*

According to Fiber Bond, this contract was negotiated at Kleen Line's headquarters in Newark, Ohio. The parties agree that the contract was executed in

6. Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

7. The parties have assumed that Illinois substantive law applies. We do not agree. Even were

we to apply Illinois law to this issue, we would reach the same result. *See, e.g., House of Vision v. Hiyane*, 37 Ill.2d 32, 225 N.E.2d 21 (1967).

8. For these same reasons, we find that this Non–Competition Agreement is ancillary to the sale of a business rather than ancillary to an employment contract.

Chicago, Illinois. The contract primarily was performed in Indiana at Fiber Bond's Michigan City, Indiana headquarters. Gutreuter did perform some of his employment duties in Ohio because it took approximately six months to wind down the Kleen Line business following the sale. Likewise, the situs of the subject matter of the contract was Indiana and Ohio. Fiber Bond is incorporated in Illinois; however, its principal place of business is in Indiana. The Gutreuters now reside in Kansas and Air Technologies is a Kansas corporation with its principal place of business in Kansas. The application of these factors demonstrates that Indiana has the most significant contacts with this litigation. Accordingly, this Court will apply Indiana law.

■ In *Donahue v. Permacel Tape Corp.*, 234 Ind. 398, 127 N.E.2d 235 (1955), the Indiana Supreme Court discussed the validity and enforceability of agreements which restrict competition. In *Donahue*, the Indiana Supreme Court stated that the issue of the validity of an agreement in restraint of trade is a question of law which the courts must decide. *Id.*, 234 Ind. at 407–09, 127 N.E.2d at 239. In deciding this issue, courts must examine the language of the covenant and the circumstances surrounding its execution. *Id.*, 234 Ind. at 403–04, 127 N.E.2d at 237. With respect to restrictive covenants which are ancillary to the sale of a business, such covenants will be enforced if the covenants are reasonable and if the covenants are limited to the area of the business sold. *See Young v. Van Zandt*, 449 N.E.2d 300, 304 (Ind. App.1938). The reasonableness of·the covenant is measured in terms of time, the geographic scope and the prohibited activity. *Id.* If the scope of the covenant is

broader than is necessary to protect the goodwill of the business sold, the covenant is invalid. *See Donahue*, 234 Ind. at 405–07, 127 N.E.2d at 238; *Young*, 449 N.E.2d at 304. If the covenant is invalid, the court may not, under the guise of interpretation, modify its terms so that the covenant can be enforced, *see Young*, 449 N.E.2d at 304; however, where the covenant is separated into clauses and some clauses are enforceable, the court may strike the invalid clauses and enforce the valid clauses. *Id.* In this particular case, the terms of the Non–Competition Agreement are overbroad, not subject to redaction and, thus, unenforceable. In the Non–Competition Agreement, the Gutreuters and Kleen Line agreed not to compete with Fiber Bond for a period of four years following the sale of Kleen Line to Fiber Bond. In addition, Keith Gutreuter agreed not to compete with Fiber Bond for a period of two years after the termination of his employment relationship with Fiber Bond.[9] The Non–Competition Agreement precludes Keith Gutreuter from having an interest in or assisting in any way any "Filter Products Business within a radius of five hundred (500) miles of the City of Michigan City, Indiana or the City of Newark, Ohio, unless such Filter Products Business shall be confined to a single metropolitan statistical area." If we were to enforce the Non–Competition, Keith Gutreuter would be unable to seek employment in the filter products market in all of thirteen states and the District of Columbia and parts of thirteen other states and parts of Canada.[10]

Clearly, this covenant is not limited in a way that protects the goodwill of Kleen Line, which was sold to Fiber Bond. Kleen Line manufactured pleated air filters. Fiber Bond concedes that it manufactures air

---

**9.** The provisions which apply to Sharon Gutreuter and Air Technologies expired on May 8, 1988, four years after the sale of Kleen Line. If this Court had upheld the Non–Competition Agreement, Fiber Bond could have pursued its claim for damages from April 13, 1987 through May 8, 1988.

**10.** The Non–Competition Agreement precludes Keith Gutreuter from having an interest in or working for a filters products business in the

entire states of Illinois, Indiana, Kentucky, Maryland, Michigan, New Jersey, North Carolina, Ohio, Pennsylvania, Tennessee, Virginia, West Virginia and Wisconsin and the District of Columbia. In addition, the Non–Competition Agreement covers parts of the states of Alabama, Arkansas, Connecticut, Georgia, Iowa, Kansas, Massachusetts, Minnesota, Mississippi, Missouri, Nebraska, New York and South Carolina and parts of Canada.

filter products other than pleated air filters. Fiber Bond argues that the Non–Competition Agreement is drafted to protect both the Kleen Line goodwill Fiber Bond purchased and the confidential information and trade secrets which pertain to its other product lines. While goodwill can include confidential information or trade secrets, Keith Gutreuter has demonstrated that much of the information that Fiber Bond claims as confidential is in the public domain. Furthermore, Keith Gutreuter has demonstrated that he has obtained much of this "confidential knowledge" through his twenty-five year career in the filter products industries. As the *Donahue* court acknowledged, knowledge, skill and information gleaned over time by virtue of one's employment in a particular field becomes part of the employee's personal equipment. *See Donahue*, 234 Ind. at 409–10, 127 N.E.2d at 240. This knowledge may not be used by Fiber Bond to buttress an overbroad Non–Competition Agreement. Furthermore, the terms of the Non–Competition Agreement are not divisible. The "limiting" subclause which would allow Keith Gutreuter to operate a business in a single metropolitan statistical area is part of the clause defining the geographical scope of the covenant. This subclause is not divisible from the geographic definition and its inclusion does not "save" this Non–Competition Agreement. Accordingly, we hold that the Non–Competition Agreement is unenforceable because its geographic scope is overbroad.

### CONCLUSION

For the reasons stated in this Opinion, plaintiff and counterdefendant Keith Gutreuter's motion for summary judgment on count II of his complaint is granted. Also, count IV of defendant and counterplaintiff Fiber Bond Corporation's counterclaim is dismissed without prejudice.

IT IS SO ORDERED.