**ALLAN BLOCK CORPORATION,**
**Plaintiff,**

v.

**COUNTY MATERIALS CORPORATION,**
**Defendant.**

No. 06–C–476–S.

United States District Court,
W.D. Wisconsin.

Dec. 1, 2006.

Gary Ahrens, Michael Best & Friedrich, LLP, Milwaukee, WI, for Defendant.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Plaintiff Allan Block Corporation commenced this breach of contract action against

defendant County Materials Corporation seeking monetary and injunctive relief. Jurisdiction is based on 28 U.S.C. § 1332(a)(1). The matter is presently before the Court on defendant's motions for summary judgment.[1] The following facts are either undisputed or those most favorable to plaintiff.

## BACKGROUND

Plaintiff Allan Block Corporation is a Minnesota corporation with its principal place of business in Edina, Minnesota. Defendant County Materials Corporation is a Wisconsin corporation with its principal place of business in Marathon, Wisconsin. In April of 1993 plaintiff entered into a production agreement (hereinafter the 1993 agreement) with County Concrete Corporation. Said agreement was subsequently assigned to defendant with plaintiff's approval. Additionally, in October of 1997 plaintiff entered into a production agreement (hereinafter the 1997 agreement) with Quality Concrete Products, Inc (hereinafter Quality). Plaintiff alleges defendant assumed the 1997 agreement in 2004 when it purchased Quality's assets. However, defendant vigorously disputes that it assumed the 1997 agreement when said purchase occurred.

Both the 1993 agreement and the 1997 agreement contain a covenant not to compete provision. The covenant not to compete contained within the 1993 agreement provides as follows:

The parties agree that during the term of this agreement and for a period of eighteen months following the termination of this agreement, [defendant] will not directly or indirectly engage in the manufacture and/or sale of any other mortarless, stackable, concrete block retaining wall product, with the following exceptions: 1) The Versa-lok product line for resale, 2) Manufacture, market and promote the "Wall Block" product currently in production at their facility.

While the covenant not to compete contained within the 1997 agreement is similar to the one included within the 1993 agreement, the two provisions are not identical. Accordingly, the covenant not to compete contained within the 1997 agreement provides as follows:

The parties agree that during the term of this Agreement, and for a period of eighteen (18) months following the termination of this Agreement, Producer will not directly or indirectly engage in the manufacture and/or sale of any other mortarless, stackable, concrete block wall products in the Territory, except with written consent of Licensor.

Additionally, both the 1993 agreement and the 1997 agreement contain sections entitled "Events of Default" identified as section nine in the 1993 agreement and as section thirteen in the 1997 agreement. Section nine of the 1993 agreement provides in relevant part as follows:

9. EVENTS OF DEFAULT

9.1 Each of the following shall entitle the nondefaulting party to declare an "Event of Default":

... 9.1.3 Either party shall fail to keep, observe or perform any other covenant or provision of, or otherwise shall have breached any provision of this Agreement, not relating to the payment of money, but including specifically the standards set forth in Exhibit A, and shall have failed to cure such a default within ten (10) days after notice from the other party

... 9.2 Upon declaration of an Event of Default, the nondefaulting party may, but shall not be obligated to, terminate this Agreement and seek all remedies available to it at law or in equity. ...

Again, while the "Events of Default" section contained within the 1997 agreement is similar to the one included within the 1993 agreement, its language is not identical. The "Events of Default" section contained within the 1997 agreement provides in relevant part as follows:

13. Events of Default:

---

1. Defendant filed its first motion for summary judgment on September 14, 2006. On October 11, 2006 defendant filed its second motion for summary judgment. In the interest of judicial economy, the Court will collectively decide defendant's motions for summary judgment in one memorandum and order.

Each of the following shall entitle the nondefaulting party to declare an "Event of Default:"

... 13.3 Either party shall fail to keep, observe, or perform any other covenant or provision of this Agreement not relating to the payment of money, and including specifically the terms of Sections 4.4, 10.5, 11.5, violations of the Product Control Standards set forth in Exhibit B, and shall have failed to cure such a default within thirty (30) days after notice from the other party.

Accordingly, the "Events of Default" section contained within the 1997 agreement does not contain the procedure for termination language included in section nine of the 1993 agreement.

However, declaring an event of default is not the exclusive method for terminating either the 1993 agreement or the 1997 agreement. Rather, both agreements provide for termination pursuant to section five which states in relevant part as follows:

The initial term of this Agreement will be one year [three years for the 1997 agreement] from the date set forth in Section 1 and will continue thereafter until terminated as provided herein. In addition to the right to terminate as provided in Section 9, [Section 13 for the 1997 agreement] either party shall have the right to terminate this Agreement at the expiration of the one year period [three year period for the 1997 agreement] or anytime thereafter, with or without cause, by giving at least one-hundred-twenty (120) days prior written notice to the other party of its intent to terminate the Agreement.

Additionally, both the 1993 agreement and the 1997 agreement contain a section entitled "Procedures after Termination" which provides in relevant part as follows:

In the event of any termination of this Agreement, whether pursuant to Section 5 or Section 9 [Section 13 for the 1997 agreement] or otherwise ... Any termination of this Agreement shall be without prejudice to any monies due or to become due to Licensor under this Agreement, and without prejudice to any other rights of Licensor.

On April 27, 2005 plaintiff notified defendant of its intent to terminate the 1993 agreement pursuant to section five. Accordingly, the 1993 agreement actually terminated on August 25, 2005. At the time of termination, defendant was aware that a considerable market for landscape block existed. As such, defendant began designing a new block that would be comparable to plaintiff's block. Defendant completed its initial design work for a new mortarless stackable concrete block retaining wall product (subsequently named "Victory" block) in or about May of 2005. Defendant's intent was to introduce its new block into the market it previously served with plaintiff's products. Defendant's Victory block product was neither a Versa-lok nor a Wall Block product.

On November 16, 2005 defendant commenced a declaratory judgment action against plaintiff in this Court (hereinafter the 2005 action) seeking a declaration that the covenant not to compete contained within the 1993 agreement was invalid and unenforceable. The covenant not to compete contained within the 1997 agreement was not at issue in the 2005 action. Defendant had not begun production of its Victory block product when plaintiff filed its answer in the 2005 action. Rather, it began production on or about March 31, 2006 and began selling its Victory block product in April of 2006.

The parties filed cross-motions for summary judgment in the 2005 action in which defendant sought a declaration that the covenant not to compete contained within the 1993 agreement was invalid and unenforceable while plaintiff requested that the Court dismiss defendant's claim for declaratory relief. On May 12, 2006 the Court granted summary judgment in favor of plaintiff (defendant in the 2005 action) finding that: (1) plaintiff did not attach the covenant not to compete contained within the 1993 agreement to its license agreement to impermissibly enlarge the scope of its patent monopoly; and (2) said covenant was valid and enforceable as a matter of state contractual law. On May 15, 2006 judgment was entered accordingly dismissing the 2005 action and "all claims contained therein with prejudice and

costs." It is undisputed that plaintiff never filed a counterclaim for breach of contract in the 2005 action.

On May 25, 2006 plaintiff's counsel sent defendant's counsel a letter by electronic mail (hereinafter e-mail) demanding that defendant cease the manufacture and sale of competing block products including its Victory block product. Said letter provides in relevant part as follows:

> ... Based on the Court's judgment entered May 15, 2006, [defendant] must immediately cease manufacture and sale of any and all competing block (except Versa-lok and Wall Block products) within the geographical areas where [defendant] previously sold [plaintiff's] products, including at least Wisconsin and Illinois.
>
> Please inform me as soon as possible whether [defendant] will agree to comply with the non-compete and cease all manufacture and sales of competing products within Wisconsin and Illinois until the normal expiration of its term on February 25, 2007. . . .

On May 26, 2006 defendant's counsel responded (by e-mail) to plaintiff's counsel's letter and advised that "[defendant] does not intend to cease selling its Victory Block in Wisconsin or Illinois."

On May 19, 2006 defendant filed a motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e) which the Court denied on June 29, 2006. Accordingly, on July 17, 2006 plaintiff's counsel again contacted defendant's counsel by e-mail and requested that defendant "immediately cease the manufacture and sale of competing block as defined in the contract." On July 19, 2006 defendant's counsel responded that defendant would cease its manufacture and sales if plaintiff met certain conditions.

On July 20, 2006 plaintiff filed a motion under 28 U.S.C. § 2202 for a permanent injunction and for leave to conduct limited discovery concerning damages. On July 26, 2006 the Court entered an order denying plaintiff's motion. In its memorandum and order the Court noted that plaintiff failed to counterclaim for declaratory relief throughout the pendency of the 2005 action and as such when it granted plaintiff's motion for summary judgment "it ordered that judgment be entered in favor of [plaintiff] against [defendant] dismissing the action and all claims contained therein with prejudice and costs which was the exact relief requested by [plaintiff.]" It is undisputed that no other relief was granted in the 2005 action.

On August 29, 2006 plaintiff commenced this action alleging that defendant has breached the covenant not to compete contained within both the 1993 agreement and the 1997 agreement by selling and installing competing block products including its Victory block product.[2] It is undisputed that plaintiff never declared an "Event of Default" pursuant to the procedures listed in either section nine of the 1993 agreement or section thirteen of the 1997 agreement before commencing this action. However, plaintiff disputes that it was required to declare an "Event of Default" before filing suit because it terminated the 1993 agreement pursuant to section five rather than section nine.

## MEMORANDUM

Defendant asserts plaintiff's breach of contract claim was a compulsory counterclaim in the 2005 action under Federal Rule of Civil Procedure 13(a). Accordingly, defendant argues said claim is now barred because plaintiff failed to assert it in the 2005 action. As such, defendant argues its first motion for summary judgment should be granted. Additionally, defendant asserts plaintiff never provided it with a proper, clear, or sufficient declaration of an Event of Default and an Opportunity to Cure which prohibits plaintiff from pursuing relief in this action. Accord-

---

**2.** In its complaint, plaintiff fails to specifically identify any other allegedly violating block product by name. However, in its proposed findings of facts (filed in opposition to defendant's motion for summary judgment) plaintiff identifies the Tribute Retaining Wall System, Allegiance Retaining Wall System, County Block® Jumbo, County Block® Junior, Navaro Retaining Wall System, Mid-sized Landscape Block, and Cut Stone Coffin Block as products which also violate the covenants not to compete. Plaintiff asserts it did not learn of these products until August of 2006. However, defendant disputes this assertion and argues that plaintiff was aware it was selling other products including its Keystone product as early as 2003.

ingly, defendant argues its second motion for summary judgment should likewise be granted.

Plaintiff asserts its breach of contract claim is not barred because under the declaratory judgment exception to the doctrine of res judicata only claims that were actually resolved in the prior litigation are barred. Additionally, plaintiff asserts its breach of contract claim was not a compulsory counterclaim in the 2005 action because its claim matured after its answer was filed. Accordingly, plaintiff argues defendant's first motion for summary judgment should be denied. Additionally, plaintiff asserts it was not required to adhere to the Notice and Cure provision as a prerequisite to commencing suit because it terminated the 1993 agreement under section five which rendered said provision inapplicable. In the alternative, defendant asserts its repeated demands for compliance with the covenants not to compete satisfied the Notice and Cure provision. Additionally, plaintiff asserts defendant's refusals to comply with the covenants not to compete rendered Notice and Cure futile. Accordingly, plaintiff argues defendant's second motion for summary judgment should be denied.

## A. Standard of Review

Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A fact is material only if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Disputes over unnecessary or irrelevant facts will not preclude summary judgment. *Id.* Further, a factual issue is genuine only if the evidence is such that a reasonable fact finder could return a verdict for the non-moving party. *Id.* A court's role in summary judgment is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2511.

To determine whether there is a genuine issue of material fact for trial courts construe all facts in the light most favorable to the non-moving party. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir.2003) (citation omitted). Additionally, a court draws all reasonable inferences in favor of that party. *Id.* However, the non-movant must set forth "specific facts showing that there is a genuine issue for trial" which requires more than "just speculation or conclusory statements." *Id.* at 283 (citations omitted). If a court determines that the material facts are not in dispute then the "sole question is whether the moving party is entitled to judgment as a matter of law." *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir.1997) (citation omitted).

## B. Compulsory Counterclaim under Rule 13(a)

 Federal Rule of Civil Procedure 13(a) provides as follows:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon the claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.

Accordingly, in order to be considered a compulsory counterclaim Rule 13(a) requires that such a claim: (1) exist at the time of pleading, (2) arise out of the same transaction or occurrence as the opposing party's claim; and (3) not require for adjudication parties over whom the court may not acquire jurisdiction. *Id.* It is undisputed that the third element is satisfied in this action. Accordingly, the Court's analysis will focus on whether the other two elements are present.

■ Courts have generally agreed that the words "transaction or occurrence" should be interpreted liberally "in order to further the general policies of the federal rules and carry out the philosophy of Rule 13(a)." *Warshawsky & Co. v. Arcata Nat'l Corp.,* 552 F.2d 1257, 1261 (7th Cir.1977)*(citing* 6 Wright & Miller, *Federal Practice and Procedure* s 1410, at 40 (1971)). The purpose of Rule 13(a) is to prevent multiplicity of actions and "to achieve resolution in a single lawsuit of all disputes arising out of common matters." *Id. (citing S. Constr. Co., Inc. v. Pickard,* 371 U.S. 57, 60, 83 S.Ct. 108, 9 L.Ed.2d 31 (1962)). Accordingly, if a counterclaim is compulsory and the party fails to assert it in the original action said claim is thereafter barred. *Burlington N. R.R. Co. v. Strong,* 907 F.2d 707, 710 (7th Cir.1990) (citations omitted).

■ The Seventh Circuit has developed a "logical relationship" test to determine whether the "transaction or occurrence" is the same for purposes of Rule 13(a).[3] *Id.* at 711. As a word of flexible meaning, "transaction" may comprehend "a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Warshawsky & Co.,* at 1261 (citation omitted). However, a counterclaim that has its roots in a separate "transaction or occurrence" is permissive and in turn is governed by Rule 13(b). *Gilldorn Sav. Ass'n v. Commerce Sav. Ass'n,* 804 F.2d 390, 396 (7th Cir.1986) *(citing Warshawsky & Co.,* at 1261).

A court's inquiry into the logical relationship test cannot be a "wooden application of the common transaction label." *Id.* at 397 (citations omitted). Rather, a court must examine the factual allegations underlying each claim to determine if the logical relationship test is met. *Burlington N. R.R. Co.,* at 711. Accordingly, there is no "formalistic test to determine whether suits are logically related. A court should consider the totality of the claims, including the nature of the claims, the legal basis for recovery, the law

involved, and the respective factual backgrounds." *Id.* (citations omitted). However, courts have held that breach of contract claims are compulsory counterclaims in actions to negate covenants not to compete because "[i]n a breach of contract case, a court necessarily passes upon the enforceability of the underlying contract [as] enforceability of the underlying contract is a prerequisite to recovery for a breach." *Gutreuter v. Fiber Bond Corp.,* 710 F.Supp. 227, 230 n. 4, (N.D.Ill.1989).

■ However, even when a counterclaim meets the same "transaction or occurrence" test a party "need not assert it as a counterclaim if it has not matured when the party serves [its] answer." *Burlington N. R.R. Co.,* at 712. This maturity exception "is derived from the language in the rule limiting its application to claims the pleader has 'at the time of serving the pleading.' " *Id.* (citation and internal quotation marks omitted). In light of the foregoing principles, the Court finds that plaintiff's breach of contract claim was not a compulsory counterclaim in the 2005 action. Accordingly, plaintiff's claim is not barred in its entirety.

■ First, plaintiff's breach of contract claim does not arise out of the same "transaction or occurrence" that gave rise to defendant's original suit as said claim concerns the 1997 agreement. Defendant's original action only involved the covenant not to compete contained within the 1993 agreement. The 1997 agreement was not addressed in the 2005 action. Additionally, the language of the two covenants is not identical, the factual backgrounds underlying the two agreements differ, and the 1997 agreement raises different legal issues than the 1993 agreement because defendant disputes that it is even a party to said agreement. *Id.* at 711. Accordingly, plaintiff's breach of contract claim was not a compulsory counterclaim in the 2005 action as said claim concerns alleged violations of the 1997 agreement.

---

**3.** As a federal court sitting in diversity the Court applies state law "to resolve substantive questions and federal law to resolve procedural and evidentiary issues." *Colip v. Clare,* 26 F.3d 712, 714 (7th Cir.1994) (citation omitted); *see* 28 U.S.C. § 1332. While the parties agree that

Minnesota law governs the substantive questions in this action, defendant's first motion for summary judgment involves a procedural issue. Accordingly, the Court will apply the federal law of this circuit to said motion.

Next, plaintiff's breach of contract claim was not a compulsory counterclaim as said claim concerns defendant's Victory block product because it had not matured when plaintiff filed its answer in the 2005 action. The covenant not to compete contained within the 1993 agreement provides as follows:

The parties agree that during the term of this agreement and for a period of eighteen months following the termination of this agreement, [defendant] will not directly or indirectly engage in the manufacture and/or sale of any other mortarless, stackable, concrete block retaining wall product, with the following exceptions: 1) The Versa-lok product line for resale, 2) Manufacture, market and promote the "Wall Block" product currently in production at their facility.

Accordingly, a claim for breach of contract is mature once defendant "engage[s] in the manufacture and/or sale of any other mortarless, stackable, concrete block retaining wall product." While defendant completed its initial design work for its Victory block product in May of 2005 it did not begin actual production and sale until March and April of 2006 respectively. This was well after plaintiff filed its answer in the 2005 action. Accordingly, the maturity exception encompasses plaintiff's claim for breach of contract against defendant's Victory block product because plaintiff did not have such a claim "at the time of serving the pleading." *Id.* at 712 (citation and internal quotation marks omitted).

■ However, a genuine issue of material fact remains for trial concerning whether plaintiff knew defendant was selling other products as early as 2003. Plaintiff asserts it did not learn that defendant was producing its Tribute Retaining Wall System, Allegiance Retaining Wall System, County Block® Jumbo, County Block® Junior, Navaro Retaining Wall System, Mid-sized Landscape Block, or its Cut Stone Coffin Block until August of 2006. Defendant disputes this assertion and contends that plaintiff knew it was selling other products including its Keystone product as early as 2003.

However, a court's role in summary judgment is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* at 249, 106 S.Ct. at 2511. The Court finds that there is and as such, defendant's first motion for summary judgment is denied.

■ However, if facts at trial demonstrate that plaintiff knew defendant was manufacturing and selling these products before it filed its answer in the 2005 action any breach of contract claim against such a product would be barred concerning the 1993 agreement because as courts have recognized: breach of contract claims are compulsory counterclaims in actions to negate covenants not to compete because "[i] n a breach of contract case, a court necessarily passes upon the enforceability of the underlying contract [and] enforceability of the underlying contract is a prerequisite to recovery for a breach." *Gutreuter,* at 230 n. 4.[4]

## C. Notice of Default and Opportunity to Cure

The 1993 agreement and the 1997 agreement are both contracts and under Minnesota law the construction and effect of a contract presents a question of law unless an ambiguity exists. *Trondson v. Janikula,* 458 N.W.2d 679, 681 (Minn.1990)(*citing Hydra–Mac, Inc. v. Onan Corp.,* 450 N.W.2d 913, 916–917 (Minn.1990)). A contract is ambiguous if its language is reasonably susceptible to more than one interpretation. *Current Tech. Concepts, Inc. v. Irie Enterprises, Inc.,* 530 N.W.2d 539, 543 (Minn.1995) (citations omitted). However, when interpreting a contract a court must give unambiguous contractual language its plain and ordinary meaning. *Minneapolis Pub. Hous. Auth. v. Lor,* 591 N.W.2d 700, 704 (Minn.1999)(*citing Bob Useldinger & Sons, Inc. v. Hangsleben,* 505 N.W.2d 323, 328 (Minn.1993)).

■ Additionally, a court is required to "construe a contract as a whole so as to

---

4. Plaintiff argues that its breach of contract claim is not barred under the declaratory judgment exception to the doctrine of res judicata. However, the Court need not address this argu-

ment because defendant's first motion for summary judgment only concerns Rule 13(a) and the two doctrines/rules are distinct. *See Warshawsky & Co.,* at 1263.

harmonize all provisions, if possible, and to avoid a construction that would render one or more provisions meaningless." *Stiglich Constr., Inc. v. Larson*, 621 N.W.2d 801, 803 (Minn.Ct.App.2001) (*citing Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 525–526 (Minn.1990)). This rule of construction is consistent with the principle that "the parties intended the language used by them to have some effect." *Indep. Sch. Dist. No. 877 v. Loberg Plumbing & Heating Co.*, 266 Minn. 426, 436, 123 N.W.2d 793, 800 (1963) (citations omitted). However, the intent of the parties must be gathered from the entire instrument and not from isolated clauses. *Country Club Oil Co. v. Lee*, 239 Minn. 148, 151, 58 N.W.2d 247, 249 (1953). Additionally, a court will not construe the terms of a contract "so as to lead to a harsh and absurd result." *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 394 (Minn. 1998) (citation omitted). The Court finds that not only are the contractual provisions at issue unambiguous but also that sections nine and thirteen do not apply to this action. Accordingly, plaintiff was not required to provide a notice of default and an opportunity to cure and defendant's second motion for summary judgment is denied.

Section nine of the 1993 agreement provides in relevant part as follows:

9. EVENTS OF DEFAULT

9.1 Each of the following shall entitle the nondefaulting party to declare an "Event of Default":

... 9.1.3 Either party shall fail to keep, observe or perform any other covenant or provision of, or otherwise shall have breached any provision of this Agreement, not relating to the payment of money, but including specifically the standards set forth in Exhibit A, and shall have failed to cure such a default within ten (10) days after notice from the other party

... 9.2 Upon declaration of an Event of Default, the nondefaulting party may, but shall not be obligated to, terminate this Agreement and seek all remedies available to it at law or in equity. . . .

Additionally, the "Events of Default" section contained within the 1997 agreement provides in relevant part as follows:

13. Events of Default:

Each of the following shall entitle the nondefaulting party to declare an "Event of Default:"

... 13.3 Either party shall fail to keep, observe, or perform any other covenant or provision of this Agreement not relating to the payment of money, and including specifically the terms of Sections 4.4, 10.5, 11.5, violations of the Product Control Standards set forth in Exhibit B, and shall have failed to cure such a default within thirty (30) days after notice from the other party.

Accordingly, the language of both contracts is unambiguous: (1) if either party fails to keep, observe, or perform any covenant or provision of the agreement, (2) the defaulting party has either ten or thirty days to cure such a default after notice has been provided; and (3) if the defaulting party fails to cure said default the non-defaulting party can then declare an "Event of Default."

Once an "Event of Default" has been declared under the 1993 agreement, the non-defaulting party may then terminate the agreement and seek all remedies available in law or in equity. As such, if a party terminates the 1993 agreement under section nine the unambiguous language of the agreement demonstrates that said party must comply with the notice of default and opportunity to cure provisions contained within said section. However, the 1997 agreement does not contain the termination and remedies language included in the 1993 agreement. Accordingly, it is clear that under the 1997 agreement the non-defaulting party does not have to provide a notice of default and opportunity to cure to the defaulting party before commencing legal action.

However, declaring an event of default is not the exclusive method for terminating the 1993 agreement. Rather, said agreement can also be terminated pursuant to section five which provides in relevant part as follows:

The initial term of this Agreement will be one year from the date set forth in Section 1 and will continue thereafter until terminated as provided herein. In addition to the right to terminate as provided in Sec-

tion 9, either party shall have the right to terminate this Agreement at the expiration of the one year period or anytime thereafter, with or without cause, by giving at least one-hundred-twenty (120) days prior written notice to the other party of its intent to terminate the Agreement.

It is undisputed that plaintiff terminated the 1993 agreement pursuant to section five rather than section nine. Said section does not contain any language concerning providing a notice of default and opportunity to cure to the other party. Accordingly, the plain and ordinary meaning of the language contained within section five demonstrates that a party is not required to provide a notice of default and opportunity to cure to the other party if it is terminating the 1993 agreement under said section. *Minneapolis Pub. Hous. Auth.,* at 704 (citation omitted).

Defendant argues that section nine of the 1993 agreement would be rendered meaningless if a party is excused from providing a notice of default and opportunity to cure before enforcing the covenant not to compete. While the Court must "construe [the] contract as a whole so as to harmonize all provisions, if possible, and to avoid a construction that would render one or more provisions meaningless," *Stiglich Constr., Inc.,* at 803 (citation omitted), it must not construe the terms of the contract "so as to lead to a harsh and absurd result." *Brookfield Trade Ctr., Inc.,* at 394 (citation omitted). If the Court adopted the construction advanced by defendant it would lead to an absurd result and render the "Procedures after Termination" section of the 1993 agreement meaningless.

Section 9.2 of the 1993 agreement provides that "[u]pon declaration of an Event of Default, the nondefaulting party *may, but shall not be obligated to, terminate this Agreement and seek all remedies available to it at law or in equity* ..." (emphasis added). Plaintiff terminated the 1993 agreement pursuant to section five. It would be absurd to find that after plaintiff terminated the agreement pursuant to section five it is still required to: (1) provide notice to defendant that it is violating the covenant not to compete, (2) allow defen-

dant ten days to cure such a default, (3) declare an "Event of Default" if defendant failed to cure its violation, (4) again terminate the already terminated agreement pursuant to section nine; and (5) then commence an action for breach of the covenant not to compete. Such an absurd construction is prohibited under Minnesota law. *Id.* Additionally, such a construction would render the "without prejudice to any other rights of Licensor" language contained within the "Procedures after Termination" section of the 1993 agreement meaningless which is also prohibited under Minnesota law. *Stiglich Constr., Inc.,* at 803 (citation omitted).[5] Accordingly, defendant's second motion for summary judgment is denied.

## ORDER

IT IS ORDERED that defendant's motions for summary judgment are DENIED.

---

**5.** Because the Court determined the Notice of Default and Opportunity to Cure provisions do not apply to this action, the Court need not address plaintiff's futility argument.